# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SHAUNTAY JERMAINE WHEATON,

    Petitioner,

vs.

MR. MCDANIEL, et al.,

    Respondents.

Case No. 3:06-CV-00397-LRH-(VPC)

**ORDER**

    Before the Court are the First Amended Petition for Writ of Habeas Corpus (#14), Respondents' Answer (#59), and Petitioner's Reply (#60). The Court finds that Petitioner is not entitled to relief and denies the First Amended Petition.

    After a jury trial in the Eighth Judicial District Court, Petitioner was convicted of burglary while in possession of a firearm, conspiracy to commit robbery, robbery with the use of a deadly weapon, and two counts of first-degree murder with the use of a deadly weapon. Ex. 61 (#21-11). The evidence presented at trial showed that Petitioner and his co-defendant, Deangelo Lamont Mitchell, entered the home of Flora Johnson and Asella Evans, robbed them, and then shot and killed them.[1] Petitioner had just turned fifteen at the time. Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 44 (#20-5). Petitioner then pursued a post-conviction habeas corpus petition in the state district court. Ex. 47 (#20-8). The state court appointed counsel, who filed a supplement. Ex. 50 (#20-11). The petition was denied, Petitioner appealed, and the Nevada

---

[1] The defendants were tried separately.

Supreme Court affirmed and remanded to correct an error in the judgment of conviction. Ex. 59 (#21-9). Petitioner then commenced this action. The Court appointed counsel, who filed the First Amended Petition (#14).

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

In Ground 1, Petitioner claims that the statements that he gave to police were not voluntary. The police arrested Petitioner soon after the shooting. Detective David Mesinar formally interviewed him. Det. Mesinar advised Petitioner about his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner waived those rights. In the course of the interview, he gave several incriminating statements. Ex. 65 (#22-4). Later, as he was being booked into the Clark County Detention Center, he told Correctional Assistant Ruth Curtis that he shot Johnson and Evans after robbing them because he did not want them to report the robbery to the police. Ex. 33, pp. 56-58 (#19-6, p. 17).[2] Petitioner moved to suppress these statements. Ex. 17 (#18-1). The district court held an evidentiary hearing on the interview. Ex. 22 (#18-6) & 23 (#18-7). The district court rejected the claim regarding the statement to Correctional Assistant Curtis because Petitioner started that conversation on his own. Ex. 24, pp. 2, 3 (#18-8, pp. 5, 6). Regarding the interview by Detective Mesinar, the Nevada Supreme Court held:

> First, Wheaton asserts that the district court erred when it admitted evidence of Wheaton's statements to a detective and a booking officer because the statements were made involuntarily. According to Wheaton, the statements were given involuntarily because he was not accompanied by a parent during the interrogation and the detective did not tell him about the possibility of an adult trial until the conclusion of the interrogation. We disagree.
>
> Under Nevada law, a confession cannot be admitted into evidence unless it was freely and voluntarily given. For a confession to be voluntary it must be the result of a free will and a rationale [sic] intellect. In making this determination, a court must examine the totality of the circumstances in order to determine whether the defendant's will was overcome when he confessed. When obtaining a confession from a minor, the government must be especially careful not to mislead the youth and should inform him of the possibility of an adult trial. However, failure to so inform a juvenile is not alone sufficient to render inculpatory statements involuntary. On appeal, a district court's decision regarding the voluntariness of a defendant's confession is final unless such a finding is plainly untenable.
>
> In Elvik v. State [965 P.2d 281 (Nev. 1998)] we concluded that a minor's confession given under circumstances similar to those presented here was voluntary. Like Elvik, Wheaton argues that his confession was involuntary because the interrogation was coercive and he did not have a parent present while being questioned. The absence of a minor's parent or guardian is a relevant consideration in determining the voluntariness of a minor's confession; however, it is merely one consideration under the totality of the circumstances. In Elvik, we upheld the district court's findings that Elvik's confession was voluntary, despite the fact that Elvik did not have a parent present during the interrogation, because he was aware of the adversarial nature of

---

[2]Page numbers in parentheses refer to the electronically filed documents in the docket.

-3-

> his surroundings and there was no evidence of false promises or intimidation. Similarly, despite the fact that Wheaton did not have a parent present during his interrogation, he was aware of the nature of the interrogation because he was given a <u>Miranda</u> warning and the interrogation occurred at the detective bureau shortly after the crime took place. Moreover, there is no evidence of physical or psychological intimidation at the hands of either the detective or the booking officer. Therefore, we conclude that there was adequate evidence to support the district court's finding that the statements were, under the totality of the circumstances, voluntarily made.

Ex. 44, pp. 1-3 (#20-5, pp. 2-4) (footnotes omitted). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 248-49 (1973). The Nevada Supreme Court identified this governing principle in its analysis. It also correctly noted that the Supreme Court of the United States has not required that a juvenile's parents be notified before a juvenile can waive his rights and be interrogated. See <u>U.S. v. Doe</u>, 155 F.3d 1070, 1073 (9th Cir. 1998). The Nevada Supreme Court addressed Petitioner's argument that there was some intimidation based merely upon Detective Mesinar's greater height and weight. Detective Mesinar's other statements during the interview, when taken in context, do not show any coercive influence. Detective Mesinar told Petitioner that he would not die for his crimes, which was true because Petitioner was younger than the age of eligibility for the death penalty. Detective Mesinar did not need to cite the applicable law, Nev. Rev. Stat. § 176.025, to Petitioner. Detective Mesinar's refusal to turn off the recording device is hardly coercive. Several times, Detective Mesinar told Petitioner to tell the truth, but he testified at the suppression hearing that he told Petitioner to tell the truth because Petitioner was saying things that he knew were untrue. Ex. 22, pp. 37-41 (#18-6, pp. 38-42). Petitioner had expressed some reluctance to speak out of fear that Mitchell or others would learn of his statements and harm him. Detective Mesinar guaranteed his safety and told him that nobody would hurt him. This was not coercion; Detective Mesinar testified that the jail would keep Petitioner safe regardless of what Petitioner told him. Ex. 23, pp. 27-28 (#18-7, pp. 28-29). Finally, at the interview Detective Mesinar told Petitioner that he would not get into any trouble. However, the statement, taken in context, is further assurance to Petitioner that he would not be attacked in jail for speaking with Detective Mesinar. Ex. 65, p. 25 (#22-4, p. 26). It

1  was not an inducement to talk with a false promise that Petitioner would not be prosecuted.  Under

2  the circumstances, the Nevada Supreme Court's decision was not an unreasonable application of

3  federal law.  28 U.S.C. § 2254(d)(1).

4       Petitioner's statements to Correctional Assistant Curtis, about killing Johnson and Evans

5  because he did not want them to report the robbery, were volunteered.  "Volunteered statements of

6  any kind are not barred by the Fifth Amendment and their admissibility is not affected by our

7  holding today."  Miranda, 384 U.S. at 478.  See also Beaty v. Stewart, 303 F.3d 975, 991 (9th Cir.

8  2002).  The state district court's rejection of this claim was a reasonable application of Miranda.  28

9  U.S.C. § 2254(d)(1).

10       In Ground 2, Petitioner argues that the prosecutor committed two separate instances of

11  misconduct during closing argument:  Quoting the Bible and vouching for a witness.

12  Coincidentally, the two instances are intertwined:

13       MR. O'NEALE:  Your Honor, counsel, ladies and gentlemen:  When I was a child, I
        spoke as a child, I thought as a child.  When I became a man, I put away childish
14       things.  Then we see it through a glass darkly now face to face.

15       What the evidence has showed you is that on September 23rd, 1998, Shauntay
        Wheaton became a man when he picked up that .45 and decided to rob two old
16       people with it.  And through the course of that day, he eventually came to see face to
        face what he had done.
17
        You've heard a lot of things.  You've been asked to make a lot of guesses.  He's a
18       scared 15-year-old kid.  Well, he's 15.  Where is the evidence that he's scared?
        There is none, because until it was too late for him to realize what he had done, he
19       was not.  You had a lot of misleading photographs brought in.  There is a big tree, B,
        as in big tree.  Well, we know Frances Wesley saw what she said she saw.  First of
20       all, she's an incredibly believable woman, I suggest to you.

21       MR. SIEGEL:  Objection, Judge.  He's vouching.

22       MR. O'NEALE:  I'm going on what the evidence shows.

23       THE COURT:  Overruled.  Go on.

24       MR. KOOT [sic]:  She's across the street.  She's lived there for years.  And when
        you look at this photograph, this overhead photograph, you can see that Alfreda
25       Russell lives next door to 832 Blankenship, and Mrs. Wesley lives directly across the
        street.
26
        Guess what?  That big tree is not in the line of sight.  The big tree doesn't exist to
27       block the line of sight.

28

> THE COURT: Although you didn't object to this, the Court is going to order that the jury disregard the statement that the prosecutor made about a child, and he spoke as a child. That's a biblical passage. It has no place in a court of law. You're ordered to disregard it.
>
> MR. O'NEALE: I suggest to you that what counsel says, you can't call on Mr. Wheaton, or you shouldn't call on Mr. Wheaton for another four or five years, that there has been a number added into the equation, 15 plus 4 shots from a .45 adds up to adulthood, whether we like it or not.
>
> Now, we have—and also, the proof that Mrs. Wesley saw what she said she saw is the fact that Mr. Wheaton admitted that he saw the person he described as the old lady that lives across the street. He saw her. If he saw her, she saw him.

Ex. 35, pp. 47-49 (#19-8, p. 14). Petitioner objects to the emphasized passages. The Nevada Supreme Court addressed these two claims together:

> Second, Wheaton asserts that he was deprived of his right to fair trial by two separate instances of misconduct committed by the State during its closing argument. In particular, Wheaton argues that the State made an improper reference to the Bible and also improperly vouched for the credibility of a witness. We disagree.
>
> Prosecutors must be free to express their perceptions of the record, evidence and inferences properly drawn therefrom. Accordingly, a criminal conviction will not be lightly overturned based upon the prosecutor's comments standing alone. However, it is improper for a prosecutor to inject his personal beliefs or opinion into his argument. When examining alleged misconduct, the misconduct must be viewed in context to determine whether the prosecutor's conduct infected the fairness of the trial. Here, the State's reference to a little known passage in the Bible did not amount to misconduct because the reference merely implied that Wheaton should be tried as an adult, which was already the case. [Footnote 15: Moreover, it does not appear that the jury was even aware of the reference to the Bible before the district admonished the jury to disregard the statement. Apparently, Wheaton was also unaware of the obscure reference given his failure to object.] Additionally, the State did not vouch for the credibility of the witness, but merely suggested that her testimony was believable in light of the evidence before the jury. Accordingly, we conclude that there was no prosecutorial misconduct by the state.

Ex. 44, pp. 3-4 (#20-5, pp. 4-5) (footnotes omitted except where noted). In argument the prosecutor can comment on witnesses' credibility as long as it does not amount to personal vouching or denigration. See United States v. Berger, 295 U.S. 78, 88 (1935). "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). The prosecutor's statement about Frances Wesley was an argument based upon the evidence, when placed into the context of the rest of his argument.

-6-

Regarding the Bible passage, 1 Corinthians 13:11-12, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation omitted). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Placed in context, the Nevada Supreme Court's determination that the prosecutor was asking the jury to treat him as an adult was a reasonable application of Darden and Donnelly. Furthermore, the prosecutor's statement could not have made the trial unfair, in light of the evidence against Petitioner. Frances Wesley saw two young people leaving the home of Johnson and Evans, and she identified one of the people as Petitioner. Ex. 31, p. 113 (#19-4, p. 32). Richard Linton, a police officer, responded to the call and found two people matching the description walking along a street a couple of blocks away. One of the two was Petitioner. Ex. 32, pp. 111-12 (#19-5, pp. 31-32). Later, he found a .45-caliber pistol and a pair of gloves at the same location. Id., p. 120 (#19-5, p. 34). Torrey Johnson, a police criminalist, could not match the bullets recovered from the house to the gun that Officer Linton recovered. Id., pp. 172-73 (#19-5, p. 47). However, he did conclude that the cartridge cases recovered from the house were fired from the gun that Officer Linton recovered. Id., pp. 178-79 (#19-5, p. 48). Finally, Petitioner admitted to Detective Mesinar his involvement in the crime, and he confessed to Correctional Assistant Curtis that he shot Johnson and Evans.

In Ground Three, Petitioner argues that the jury instruction regarding malice, an element of murder, created an improper presumption that minimized the prosecution's burden of proof. The instruction in question stated:

> Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.
>
> <u>Malice may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.</u>

Respondents Ex. 58A-2, Instruction 26 (#35-6, p. 8) (emphasis added). Petitioner was charged with two counts of open murder. Ex. 8 (#17-3). Open murder is a charge of first degree murder which includes the lesser offenses of second degree murder, voluntary manslaughter, and involuntary manslaughter. Nev. Rev. Stat. § 175.501; Miner v. Lamb, 464 P.2d 451, 453 (Nev. 1970). The trial court also gave the jury these instructions:

> Murder of the First Degree is murder which is (a) committed in the perpetration of Burglary, or (b) committed in the perpetration of Robbery, or (c) perpetrated by any kind of willful, deliberate and premeditated killing.

Ex. 58A-2, Instruction 27 (#35-6, p. 9).

> Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing. All three elements—willfulness, deliberation, and premeditation—must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder.

Ex. 58A-2, Instruction 28 (#35-6, p. 10).

> The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of robbery or burglary is murder of the first degree when the perpetrator had the specific intent to commit robbery or burglary.
>
> The Specific intent to commit robbery or burglary and the commission or attempted commission of such crime must be proved beyond a reasonable doubt.
>
> This is called the Felony Murder Rule.

Ex. 58B, Instruction 36 (#35-7, p. 9).

> All murder which is not murder of the first degree is murder of the second degree.
>
> Murder of the second degree is murder which is
>
> (1) An unlawful killing of a human being with malice aforethought, but without deliberation and premeditation, or
>
> (2) Where an involuntary killing occurs in the commission of an unlawful act, which in its consequences, naturally tends to take the life of a human being.

Ex. 58B, Instruction 42 (#35-7, p. 15).

The jury found Petitioner guilty of first degree murder on both counts of open murder. The instructions defined first degree murder either as a willful, deliberate, and premeditated killing, or as a killing in the course of burglary or robbery. If the jury determined that the killings of Johnson and Evans were willful, deliberate, and premeditated, then the jury necessarily determined that Petitioner had the deliberate intention to kill, thus establishing express malice. Ficklin v. Hatcher, 177 F.3d 1147, 1151 (9th Cir. 1999). If the jury determined that the killings of Johnson and Evans were during the commission of an intended robbery or burglary, and the jury did find that Petitioner had committed robbery and burglary, then pursuant to the felony murder rule the intention to commit either of those crimes transfers to the killing as implied malice. Ford v. State, 660 P.2d 992, 995

(Nev. 1983). Either way, the jury could not have relied upon the definition of implied malice in Instruction 26 to convict Petitioner of first degree murder, and any error in that instruction is harmless. <u>Ficklin</u>, 177 F.3d at 1151. Ground Three is without merit.

IT IS THEREFORE ORDERED that the First Amended Petition (#14) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

DATED this 20th day of August, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE